UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JUDITH BARR, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. H-11-337 |
| § | |
| TODD BARR, § | |
| § | |
| Respondent. § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Before the Court is Petitioner Judith Barr's Verified Petition for Return of Children to the United Kingdom of Great Britain and Northern Ireland. (Doc. 1.) The Court held a hearing on February 25, 2011, at which the testimony of Petitioner Judith Barr and Respondent Todd Barr was heard. (Doc. 24.) At the conclusion of the hearing, the Court ordered the two minor children returned to the custody of their mother, Petitioner Judith Barr. (*Id.*) Below is a statement of the Court's reasons.

#### Findings of Fact

1. Petitioner Judith Barr and Respondent Todd Barr were married on September 13, 1997, in Palos Verdes, California.

2. Judith Barr is a resident of the United Kingdom.

3. Judith Barr and Todd Bar are the parents of C.B., born in 1999, and K.B., born in 2001 (the "children") in the United States. (Doc. 1 at 13–16, Exhibits A and B.)

4. In July 2008, Respondent Todd Barr's employer transferred him to the United Kingdom for a four year term.

5. Petitioner, Respondent, and the children moved as a family from the United States to the United Kingdom in July 2008.

6. On January 28, 2009, Respondent Todd Barr initiated divorced proceedings in the High Court of Justice in England, Principal Registry of the Family Division (the "English Court").

7. On May 18, 2010, in a written judgment, the English Court noted that both parties agreed that the Petitioner "wife would be the primary carer and the [Respondent] husband would have generous contact with all the children." (*Id.* at 21, ¶ 10(1), Exhibit C.)

8. On June 17, 2010, the English Court issued a decree awarding the parties an absolute divorce. (*Id.* at 37, Exhibit D.)

9. Respondent Todd Barr then filed an application for holiday contact in the English Court, requesting permission to travel to the United States with the children for a summer vacation.

10. On July 23, 2010, the English Court entered an order allowing Respondent to travel with the children to the United States for summer vacation from July 20, 2010 until August 18, 2010. (*Id.* at 40, ¶ 2, Exhibit E.)

11. The children travelled to the United States for their summer vacation with their father, and were due to be returned to the United Kingdom on August 19, 2010.

12. On August 18, 2010, Respondent Todd Barr sent Petitioner Judith Barr a one-sentence e-mail stating that he would not be returning the children to the United Kingdom. (Doc. 1-1 at 2, Exhibit F.)

13. Respondent Todd Barr thereafter refused to return the children. (*See*, Doc. 1-2 at 12–13.)

14. On August 24, 2010, Petitioner Judith Barr filed an application for return of the

children with the Central Authority for England and Wales. (Doc. 1-1 at 6–15, Exhibit G.)

15. On September 2, 2010, Petitioner's application was transmitted to the U.S. Department of State, the central authority in the United States under the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (the "Hague Convention"). (*Id.* at 4–5, Exhibit G.)

16. On January 24, 2011, Petitioner Judith Barr filed suit in this Court. (Doc. 1.)

17. The Court held a show cause hearing on February 25, 2011, at which the testimony of Petitioner Judith Barr and Respondent Todd Barr was heard. (Doc. 24.)

18. Based on the briefing and testimony taken at the hearing, the Court found that before the children's retention in the United States, the United Kingdom was the children's home and habitual residence. The children were enrolled in school in the United Kingdom and fully involved and integrated in daily and cultural life in the United Kingdom.

Conclusions of Law

1. The Hague Convention established legal rights and procedures for the prompt return of children "wrongfully removed to or retained in " a nation that is party to the Convention. Hague Convention, Art. 1.

2. For purposes of the Hague Convention, "'rights of custody' shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence[.]" *Id.*, Art. 5(a.).

3. The primary purpose of the Hague Convention is "to restore the pre-abduction status

quo." *Abbott v. Abbott*, 130 S.Ct. 1982, 1989 (2010); *England v. England*, 234 F.3d 268, 271 (5th Cir. 2000).

4. The Court has jurisdiction over this matter under the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601 *et seq.*

5. A person seeking the return of a child under the Convention may commence a civil action by filing a petition in a court where the child is located. 42 U.S.C. § 11603(b).

6. The scope of a court's inquiry under the Hague Convention is limited to the merits of the claim for wrongful removal or retention. Hague Convention, Art. 16, 19; 42 U.S.C. § 11601(b)(4); *Abbott*, 130 S.Ct. at 1989; *England*, 234 F.3d at 271.

7. The merits of any underlying custody issues are therefore not before the Court. *Id.*

8. Petitioner bears the burden of showing by a preponderance of the evidence that the removal or retention was wrongful under Article 3; Respondent must show by clear and convincing evidence that one of Article 13's exceptions apply. *Feder v. Evans-Feder*, 63 F.3d 217, 222 (3rd Cir. 1995) (citing 42 U.S.C. § 11603(e)(1)(A), (2)(A)); *See also, Mozes v. Mozes*, 239 F.3d 1067 (9th Cir. 2001).

9. To establish a *prima facie* case of wrongful removal or retention under the Hague Convention and ICARA, Petitioner must show by a preponderance of the evidence that: (1) the habitual residence of the children immediately before the date of wrongful retention was the United Kingdom; (2) the retention breached the Petitioner's custody rights under the law of the United Kingdom; and (3) the Petitioner was exercising custody rights at the time of the retention. *Abbott*, 130 S.Ct. at 1989; *England*, 234 F.3d at 270; Hague Convention, Art. 3.

10. A parent cannot create a new habitual residence by wrongfully removing or retaining

a child. *Diorinou v. Mezitis*, 237 F.3d 133 (2nd Cir. 2001); *March v. Levine*, 249 F.3d 462 (6th Cir. 2001).

11. After determining that the children's habitual residence in this case is the United Kingdom, the Court must then consider whether the Petitioner had rights of custody at the time of the retention. *Whallon v. Lynn*, 230 F.3d 450, 455 (1st Cir. 2000).

12. Whether Petitioner has rights of custody is determined based upon the law of the children's habitual residence, here, the United Kingdom. *Id.*

13. The Court finds, as a matter of law, that the children's habitual residence was the United Kingdom and that Petitioner Judith Barr had rights of custody under the law of the United Kingdom. (*See,* Doc. 1 at 21, ¶ 10(1), Exhibit C.)

14. The Court further finds that none of the exceptions to return apply. Hague Convention, Art. 12, 13; *Abbott*, 130 S.Ct. at 1989; *England*, 234 F.3d at 270.

## Judgment

Accordingly, because the Court found that the habitual residence of the minor children is the United Kingdom and that Respondent's retention of the children in the United States was wrongful, the Court ORDERED after the conclusion of the hearing, from the bench in open court that the minor children be returned forthwith to the custody of Petitioner Judith Barr.

SIGNED at Houston, Texas, this 28th day of February, 2011.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE